## Keeling v. Commonwealth.

(Decided January 15, 1918.)

### Appeal from Marion Circuit Court.

1. Criminal Law—Trial by Jury Cannot Be Waived by Defendant.— The defendant in a capital case does not lose his right to make the question in the trial court or on appeal that he was tried and convicted by a jury of less than twelve persons, although he may have failed during the trial to make any objections or save any exceptions to the fact that the trial jury was not composed of the requisite number.

2. Criminal Law—Change of Venue—Waiver of Right to Object.— Whether the defendant in a capital case may waive his right to a trial in the county in which the crime charged was committed by failing to object to the removal of the prosecution to another county, is not decided.

3. Criminal Law—Change of Venue on Motion of Commonwealth— Sufficiency of Petition.—A petition for a change of venue filed by the attorney for the Commonwealth under section 1111 of the Statutes in which it was set out that on account of a strong prevailing sentiment in favor of the accused the Commonwealth could not have a fair trial in the county in which the indictment was found, was sufficient, in the absence of objecting evidence,

to authorize the trial judge to remove the prosecution to another county.

4. Criminal Law—Change of Venue—When Judge Should Grant on Motion of Commonwealth.—The purpose of the constitution and Statutes was to secure to both the accused and the Commonwealth on equal terms the opportunity to have a fair trial by a jury free from the influence of any prevailing prejudice or popularity, and when the judge is satisfied by the petition of the attorney for the Commonwealth that such a trial cannot be had in the county in which the prosecution is pending, he is authorized to transfer it to another county.

W. F. GRIGSBY and S. A. RUSSELL for appellant.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In May, 1914, the appellant, Keeling, was indicted by the grand jury of Washington county for the murder of Frank Casteel in April, 1914. After four trials in Washington county, where the offense was committed and the indictment found, each of which resulted in a mistrial, on account of the failure of the jury to agree, the trial court, on the motion of the attorney for the Commonwealth, transferred the case to Marion county, and on a trial had in that county, the jury found Keeling guilty and fixed his punishment at confinement in the penitentiary for not less than six nor more than ten years. And from the judgment on this verdict Keeling prosecutes this appeal.

A very brief statement of the facts is all that will be needed in order to understand the grounds for reversal relied on. Keeling and one Larkin Dean owned adjoining farms in Washington county, and they disagreed as to the location of the division line between the lands. While this disagreement existed, and on April 10, 1914, Dean and one Thomas Cheatham went to the line in dispute and commenced to build a fence. While they were engaged in this work, Keeling came up and objected to the location of the fence as made by them upon the ground that they were encroaching upon his land, and after quite a heated controversy over the matter, he went away. In the afternoon Dean returned to the work of building the fence and brought with him Tom Cheatham, Isham Cheatham and Frank Casteel, and they again went to work constructing the fence. Soon afterwards Keeling rode up and again protested and objected that they were

encroaching on his land. At this time there was an angry controversy between Keeling and Tom Cheatham, but no assault was made by either of the parties or by Keeling on any of the men building the fence. After the wordy dispute had continued for a while, Keeling rode away, and in a short time came riding back with a gun in his hand. Tom Cheatham says that he told him to take the gun and go back to the house with it, and thereupon Keeling raised the gun and fired, killing Casteel, who was nearby. He further says that Casteel and Keeling were good friends and there was no quarrel between them on this day, nor had Casteel said anything to Keeling to arouse his anger or hurt his feelings.

Keeling, in relating what took place, said that he had no grievance whatever against Casteel or any intention of killing him or doing him any harm; that they had always been and at that time were good friends; that when he rode up he and Tom Cheatham exchanged some angry words, or at least that Cheatham, who had a post-hole digger in his hand, used some rough language towards him and seemed to be in the attitude of attacking him; that he put his gun in position so that he could defend himself if Cheatham attacked him, and in some way or manner that he could not very well explain, the gun went off without any intention on his part to fire it at the time, or to shoot Casteel.

In short, the theory of the Commonwealth was that Keeling intentionally fired his gun, although probably he intended to shoot Cheatham and not Casteel; while the defense of Keeling was put upon the ground that the firing of the gun was purely accidental.

When the case was called in the Washington circuit court for the fifth trial on March 9, 1917, the attorney for the Commonwealth, pursuant to a notice previously executed on Keeling, moved the court to transfer the case to another county, and in support of this motion filed the following petition, signed by himself:

"The Commonwealth of Kentucky, by Attorney B. T. Harding, comes and petitions his honor, I. H. Thurman, judge of the Washington circuit court, for change of venue in the case of the Commonwealth of Kentucky v. J. R. Keeling, charged with wilful murder, for the reasons that plaintiff cannot have a fair trial in Washington county, where said case is pending; that there is an undue influence of such weight and shared in by a vast multitude of the citizens of Washington county, and by

more than ninety per cent. of the population of the city of Springfield, that is exerted, used and fostered in behalf of the defendant, and to the prejudice of the rights of the plaintiff. That said citizens are trying to and have and are exerting such powerful influence, and are busy extolling and promulgating the defendant and his alleged good qualities and his innocence unduly and to the extent to prejudice the rights of plaintiff and prevent him from having a fair, impartial trial. That the trial court room and the approaches to same, at the time and during the trial of defendant, are filled by citizens aforesaid, and their interests and influence in behalf of the defendant, and their exercise of same on behalf of defendant, is so powerful that it is next to the impossible to keep it from the jury trying said case, and a jury is and would be deterred and influenced unconsciously in finding a proper verdict, and that same is an undue influence to the extent of preventing plaintiff from having a fair and impartial trial. That there has been in this, Washington, county four trials, or mistrials, of this case by juries made up of this county, resulting in disagreement or hung juries. Petitioner prays the court for a change of venue from this county to some adjacent county, that justice may be done.''

No evidence was offered by the defendant in opposition to this request.

Whereupon the trial court, without objection, ordered the case to be transferred to the adjoining county of Marion, where a trial was had with the result stated.

On this appeal two grounds for reversal are relied upon: First, that the court erred in changing the venue from Washington to Marion county; and, second, that the court erred in failing to properly instruct the jury.

It appears from the record that no objection was made or exception taken at the time to the action of the trial court in transferring the case from Washington to Marion county, but in the motion for a new trial one of the grounds relied on was this alleged error, and in support of this ground the argument is made: (1) That the statement filed by the attorney for the Commonwealth asking that the case be transferred was not sufficient to authorize its transfer, and therefore the Washington circuit court was without jurisdiction to order the change of venue; (2) that the defendant was entitled under the constitution to a trial in the county in which the crime was committed,

and so the Marion circuit court had no jurisdiction to either hear the case or pass judgment on the accused.

These two contentions may be disposed of together, as they really involve only one question, and that is, did the Washington circuit court have jurisdiction to transfer the case to the Marion circuit court? If the Washington circuit court did not have jurisdiction to change the venue, there would be much force in the contention that the Marion circuit court did not have jurisdiction to hear and determine the case, although the record does not show that the defendant made any objection or saved any exception to proceeding with the trial in Marion county.

There are some rights so securely preserved by the constitution to the accused in capital cases that he may avail himself of their protection although he has failed to observe the rules of practice requiring an objection to be made or an exception to be saved in order that an error committed by the trial court may be taken advantage of on appeal. For example, in section 7 of the Bill of Rights in our State Constitution it is provided: ''The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this constitution.'' And it is well settled that in capital cases the right of trial by jury as expressed in this section means a trial by a jury of twelve men, all of whom must agree upon the verdict. Wendling v. Com., 143 Ky. 587, and authorities therein cited.

Nearly all the states have a constitutional provision similar to our section 7, and it is a rule of general application found in all text-books, and, so far as our investigation goes, observed by all courts, that the defendant in a capital case does not lose his right to make the question in the trial court or on appeal that he was tried and convicted by a jury consisting of less than twelve persons, although he may have failed during the trial to make any objection or save any exception to the fact that the trial jury was not composed of the requisite number of jurors. Thus it is said in Cooley's Constitutional Limitations, 6th ed., page 390:

''Any less than this number of twelve would not be a common-law jury, and not such a jury as the constitution guarantees to accused parties, when a less number is not allowed in express terms; and the necessity of a full panel could not be waived—at least in case of felony— even by consent. The infirmity in case of a trial by jury of less than twelve, by consent, would be that the tribunal

would be one unknown to the law, created by mere voluntary act of the parties; and it would in effect be an attempt to submit to a species of arbitration the question whether the accused has been guilty of an offense against the state.''

In Re McQuown, 19 Okla. 347, 11 L. R. A. (N. S.) 1136, and the editorial note thereto; also in State v. Rogers, 162 N. C. 656, 46 L. R. A. (N. S.) 38, and editorial note thereto, numbers of authorities supporting the rule announced by Cooley may be found.

Whether this principle should, as urged by counsel, be extended to and embrace the constitutional guaranty found in section 11 of the Bill of Rights, that the accused is entitled to ''a speedy public trial by an impartial jury of the vicinage,'' which means a trial in the county in which the crime charged was committed and before a jury selected in that county, unless on motion of the Commonwealth the venue is changed in the manner authorized by the constitution or the jury brought from another county as authorized by the code, we do not find it necessary to decide, because we think the Washington circuit court had authority and jurisdiction to remove the case to Marion county upon the statement made by the attorney for the Commonwealth.

Section 11 of the Bill of Rights provides, in part, that: ''In all criminal prosecutions the accused has the right to . . . a speedy public trial by an impartial jury of the vicinage, but the General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth, the change to be made to the most convenient county in which a fair trial can be obtained.''

Pursuant to this constitutional direction, the General Assembly adopted section 1109 of the Kentucky Statutes, reading: ''When a criminal or penal prosecution is pending in any circuit court, the judge thereof shall, upon the application of the defendant or the Commonwealth, order the trial to be had in some other adjacent county to which there is no valid objection, if it appears that the defendant or the Commonwealth cannot have a fair trial in the county where the prosecution is pending; and if the judge is satisfied that a fair trial cannot be had in an adjacent county, he may order the trial to be had in the most convenient county in which a fair trial can be had.''

In section 1111 it is further provided: "If the application is made by the Commonwealth, a petition stating the reasons therefor and signed by the Commonwealth's Attorney shall be filed in court, and reasonable notice in writing of the time when the application will be made must be given to the defendant, or, if he be absent from the county, to his attorney; and the application shall be heard and determined as provided in the next preceding section."

In section 1112 it is further provided: "Whenever any judge·shall be satisfied from his own knowledge, and from the written statement of the Commonwealth's attorney, that such a state of lawlessness exists in any county that the officers will be prevented from discharging their duty, or the jurors be deterred from rendering an impartial verdict, he may order the prosecution removed to some other county in which a fair trial can be had; and the fiscal court of the county from which such removal is made shall allow and pay the costs thereof out of the county levy."

It will be observed that under section 1109, which is fully authorized by section 11 of the constitution, the Commonwealth is entitled to a change of venue when it is made to appear that the Commonwealth cannot have a fair trial in the county where the prosecution is pending, and this removal may be made by the judge when there is filed, as provided in section 1111, a petition signed by the Commonwealth's Attorney stating the reasons why the prosecution should be removed. Neither section 11 of the constitution nor sections 1109 or 1111 of the statutes point out the grounds upon which or the causes for which the venue may be changed on motion of the Commonwealth. It is only required when the application is made under section 1109 that the attorney for the Commonwealth shall file his petition after giving the required notice stating the reasons for the removal, and it is then for the judge in the exercise of a sound discretion to determine whether the motion for removal shall be sustained, and it is only when it plainly appears that the discretion thus lodged in the judge has been abused that this court will interfere with his ruling in either granting or refusing a change of venue. This point has so frequently been ruled as to make superfluous citation of authority.

After making provision in sections 1109 and 1111 for the removal of a prosecution on motion of the Com-

monwealth apparently sufficient to meet the exigencies of every condition that might come up, the legislature enacted section 1112 of the statutes, making provision for a state of affairs the existence of which it seemed to think might not authorize a change of venue under section 1109.

The application, however, for a change of venue in this case was not made under section 1112, but under section 1109, and we think the reasons given by the attorney for the Commonwealth, especially in the absence of objecting evidence, were sufficient to authorize the trial judge, in the exercise of a sound discretion, to remove the prosecution from Washington county.

The purpose of the constitution and the statutes was to secure to both the accused and the Commonwealth on equal terms the opportunity to have a fair trial by a jury, free from the influence of any prevailing prejudice or popularity such as too often finds its way into the jury room and consciously or unconsciously causes the jurors, or some of them, to lean towards that side that has the support of the dominant opinion. Every circuit judge has seen in jury trials the silent operation and effect of the influence of a strong public sentiment, although it may not manifest itself in a way that will enable him to correct its harmful consequences on the rights of the party who was prejudiced by its existence.

In order, therefore, to give substantial meaning and effect to the constitutional as well as statutory design that each party shall be heard before an impartial jury, it is the duty of the judge, when he is satisfied by the petition of the attorney for the Commonwealth that such a trial as is contemplated by the constitution and statutes cannot be had in the county in which the prosecution is pending, to transfer it to another county. Com. v. Davidson, 91 Ky. 162; Wallace v. Com., 167 Ky. 277; Allen v. Com., 168 Ky. 325.

It results from what we have said that the accused did not lose anything by the failure of his counsel to object to the order of removal, because there is no showing that the trial judge abused his discretion in directing the removal.

There is a minor criticism of the instructions, but it is not substantial. Every phase of the case was covered by the trial judge in a set of instructions admirable for their brevity and clearness.

The judgment is affirmed.