## Simmons et al. v. Commonwealth.

(Decided March 10, 1936).

ROY G. GARRISON and R. L. MYRE for appellant.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Between 10 and 11 p. m. on June 30, 1935, a southbound freight train of the Illinois Central Railroad Company pulled into its yards at Paducah, Ky. In walking along this train, W. H. Purdew, a car inspector and R. R. Fuller and Richard Kelly, special agents or detectives for the railroad company, discovered a rope which had been tied to the running board running

lengthwise at the top of the car hanging down at or near the door and saw other evidences that the car had been broken and entered. Kelly suggested that an inspection be made to determine if any freight had been taken and in carrying out this suggestion took hold of the side of the door and with the assistance of others started sliding it back. When the door had been partially opened, Kelly, who was standing directly in front of the opening, threw a light into the car and immediately called to the others, "Look out, he has a pistol," or words to that effect. Immediately a number of shots were fired from the inside of the car, one of which entered the lapel of his coat, passed through the body penetrating the heart, and caused instantaneous death. His companions sought cover and before they could secure help the culprit or culprits had escaped without being seen by either of them.

Later, the grand jury of McCracken county returned an indictment against Dubois Pearson and Roy Simmons, alias Desoto Simmons, alias Soda Simmons, alias Joe Thomas, charging that they feloniously and with malice aforethought banded, confederated, conspired, agreed, and connived with each other for the purpose of breaking and entering the box car of another with intent to steal therefrom articles and property of value belonging to another and while engaged in breaking and entering into a box car of the Illinois Central Railroad Company with intent to steal therefrom articles and property of value belonging to another, in pursuance of said conspiracy, combination, and agreement, they then and there unlawfully, feloniously, maliciously, willfully, and with malice aforethought killed and murdered Richard Kelly by shooting and wounding him with a deadly weapon, etc.

On separate trial Simmons has been found guilty, his punishment fixed at death and he is appealing.

Immediately after the tragedy the officers and others searched the car and surrounding premises, finding in the car a crowbar, small knife, a note, and some empty cartridge shells. They also found on and in the ground where the shooting occurred four or five bullets and fragments of bullets. A 45 automatic pistol was introduced in evidence, which the evidence conclusively shows belonged to appellant and was in his possession on the night of the tragedy. A short time after the shooting, appellant was arrested at Centralia, Ill., along

with two or three other colored men. This pistol was taken from him at the time, but he escaped from the officers. The Centralia policeman who arrested appellant was called as a witness and was positive in his identification of him and of the pistol. Some of the men who were arrested with him at Centralia testified that they got on a freight train with him at Metropolis, Ill., and went with him to Centralia where they were arrested. They were positive in their identification of him and also testified that the officer took the pistol from him. A woman with whom appellant lived at Paducah also identified the pistol as one belonging to appellant, stating that she had seen it a number of times. She stated that about 2 or 3 o'clock on the night of the tragedy appellant came to her home and knocked on the window; that she got up and admitted him; and that on undressing to go to bed he placed this pistol under his pillow. Others testified to having seen the pistol in possession of appellant prior to the shooting. A number of witnesses testified that appellant and his codefendant had told them of their plans to break into the car and one witness testified that they, accompanied by a man whom he did not know, came to his home one day, told him of their plans and wanted to borrow a crowbar; that appellant and Pearson came again on the afternoon of the tragedy and got a crowbar which he identified as the one found in the car.

It will be unnecessary to go further into this phase of the case since both Simmons and Pearson admit that in the afternoon of June 30th they went to Princeton, Ky., boarded the freight train, tied the rope around the running board. descended, broke open, and entered the car. They stated that while the train was in motion a lurch caused the car door to close and fasten. They tried to attract the attention of hoboes to open the door and finally resorted to writing notes which they attempted to slip out under the door, one of which was later found by the officers and introduced in evidence. When they arrived in Paducah, the officers came and opened the door. Up to this point there is little conflict in their evidence. Pearson testified that appellant had the 45 automatic introduced in evidence and indicated he was going to shoot his way out and that when the door opened he did begin firing. Appellant testified that he had no pistol and fired no shots, but that a third man whom he did not know was with them and

started the shooting. He also indicated that Pearson fired some shots and that the third man went with them to get the crowbar. In this he is contradicted by the owner of the crowbar and by Pearson, the latter further stating that there was no one with appellant and him in the car.

D. J. Parsons, who is employed in the testing laboratory of the Federal Bureau of Investigation of the United States Department of Justice and who testified to long training and experience in ballistic identification, examining projectiles and ammunition and guns from which they are fired, stated that he examined the shells and bullets found in the car and in the ground just outside of where it stood and made all proper and known laboratory tests, comparing the bullets and shells with bullets and shells which he fired from the automatic pistol introduced in evidence. He demonstrated before the jury with photographs of the materials found in and near the car that the markings thereon, microscopically enlarged, were identical with the markings found on the shells and bullets fired from the pistol introduced in evidence. The evidence of this witness is interesting, instructive, and convincing. In summing up, he was asked this question, "Can you say positively from a scientific standpoint that this evidence bullet was fired from this evidence gun?" And he replied, "Without any doubt."

It is argued by counsel for appellant that demurrer to the indictment should have been sustained because it is duplicitous in that it charged both conspiracy to break and enter the box car with intent to steal therefrom and a murder committed pursuant to the conspiracy by shooting Richard Kelly. The indictment charged both of the defendants with the commission of the crime and in separate counts charged each with the commission of the crime and the other with aiding and abetting.

The second ground argued for reversal is that the instructions given the jury were erroneous.

Counsel for appellant very frankly admits that the commonwealth has woven a web of evidence around appellant from which there is little, if any, possibility of escape, but is most earnestly insisting that he has not been given that fair and impartial trial guaranteed

to him by the law; that if he is required to pay the extreme penalty, it should be in strict conformity with the law and established rules of procedure. In support of the first contention made, sections 126 and 127 of the Criminal Code of Practice, section 898 of Rose's Criminal Law, sections 966 and 972 of Gregory's Criminal Law, and the case of Chappel v. Commonwealth, 200 Ky. 429, 255 S. W. 90, are cited. These are to the effect that except as mentioned in section 127 of the Criminal Code an indictment must charge but one offense. The rule contended for is firmly established, however, it is not the rule but its application with which we are to be concerned. The correct principle was recognized in the Chappel Case, but this court has concluded that it was misapplied in that instance as will be seen by the later case of Hannah v. Commonwealth, 242 Ky. 220, 46 S. W. (2d) 121, where the Chappel Case was overruled in so far as it held the indictment drawn under section 1160 of the Statute to be duplicitous.

In the case of Sexson v. Commonwealth, 239 Ky. 177, 39 S. W. (2d) 229, the indictment charged in substance that Sexson and others willfully, maliciously, and feloniously conspired together and pursuant to the conspiracy with violence robbed a bank at Oakland, Ky., with force and arms and took therefrom a large amount of money and then to make good their escape and to get away with the money they had stolen, willfully, maliciously, and feloniously shot and killed Robert J. Kirtley. It was held that the indictment was not duplicitous and that it charged but one offense.

In the case of Tincher v. Commonwealth, 253 Ky. 623, 69 S. W. (2d) 750, 751, Tincher and others were charged with entering into a conspiracy to rob a bank located at Stamping Ground, Ky., and pursuant to such conspiracy one of Tincher's associates shot and killed Ben Keenon. It was contended that the indictment was duplicitous in that it charged the accused with both murder and conspiracy to rob the bank which are separate and distinct offenses. In the course of the opinion it is said:

"However, it is our conclusion that the mere statement of the contention is sufficient to refute the

argument. The facts were that the conspiracy was formed to perpetrate the robbery and which it was eminently proper should be stated in the indictment, as it was also proper that the killing should be charged to have resulted from some act committed in pursuance to the execution of that conspiracy.''

In the case of the Commonwealth v. Walters, 206 Ky. 162, 266 S. W. 1066, Mrs. Walters, pursuant to a conspiracy to assist her husband who was serving a life term in the penitentiary at Eddyville to escape, smuggled firearms to him and in making his escape he shot and killed a guard. The indictment charged that the shooting and killing was done pursuant to a conspiracy. Mrs. Walters admitted the agreement and arrangement to effect the escape, but defended on the ground that she was relying on the statements of her husband that the guns would not be used to shoot a guard or other person in making the escape.

The court referred to the prevailing doctrine that when individuals associate themselves in an unlawful enterprise, an act done by one in pursuance of a conspiracy is the act of all and extends to such results as are the natural and probable consequences of such act, even though such consequences were not specifically intended as a part of the original plan. It was said that Mrs. Walters' defense was far-fetched and fanciful.

The authorities are conclusive and demonstrate with reason and logic that the indictment is not duplicitous, nor is the reference to the conspiracy mere surplusage. The conspiracy and acts done in its execution, including the killing of Richard Kelly in pursuance thereof, which was the natural and probable consequences, are so interwoven as to be inseparable; and as indicated in Tincher v. Commonwealth, supra, the proposition that it was both proper and necessary to set out the conspiracy and murder committed in the pursuance thereof is too elementary to require discussion.

Concerning the second ground, it is first urged that instruction No. 1 is erroneous in that it refers to the conspiracy as charged, but what we have already said concerning the correctness of the indictment effectively disposes of this contention.

Finally, it is urged that the court erred in not defining "conspiracy." No authorities are cited in support of this contention. We find that in the case of Powers v. Commonwealth, 114 Ky. 237, 70 S. W. 644, 645, 1050, 71 S. W. 494, 24 Ky. Law Rep. 1007, 1186, 1350, where one was charged with being an accessory before the fact of a murder alleged to have been committed as the result of a conspiracy, it was held that an instruction in regard to acts done in pursuance of a conspiracy "to do some unlawful act" should have further informed the jury what would have been such an unlawful act under the law and the evidence; but that case called forth a vigorous dissent.

In the case of Renaker v. Commonwealth, 172 Ky. 714, 189 S. W. 928, it was held that where the statements of law in the instruction were so full and clear as to constitute such a definition of the word "conspiracy" that the jury could not have failed to understand its legal meaning, it was unnecessary for the court to further define the word. Here the instruction follows the language of the indictment and so clearly sets forth the law as to constitute a definition of the word "conspiracy" and therefore it was unnecessary for the court to further define the term.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.