## Cooper v. Commonwealth.

June 22, 1945.

H. C. Kennedy for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spears, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

By reference to Commonwealth v. Cooper, 295 Ky. 247, 173 S. W. 2d 128, it will be noted that appellant, with other election officers, was indicted for violation of election laws. The question in that case had to do with the change of venue from Harlan to Wayne County, and the order directing a remand to Harlan County. We held the order erroneous. Following filing of mandate appellant demurred to the indictment on the ground that it charged non-joinable offenses, and moved to require the Commonwealth to elect; the court overruled demurrer and motion. After several continuances the case went to trial, the jury returning a verdict of guilty, fixing penalty at confinement for two years; judgment was entered accordingly, motion for new trial overruled and appeal followed.

In brief it is contended that the court erred in refusing to hold that the change from Harlan to Wayne was erroneously granted, because (1) it was without notice to defendant, and was changed to Wayne rather

than an adjacent county; (2) in overruling appellant's motion to remand to Harlan; (3) in overruling demurrer to the indictment; (4) in rejecting competent testimony offered by defendant; (5) in admitting incompetent evidence; (6) in overruling appellant's motion for a favorable peremptory instruction, and (7) in failing to instruct the jury correctly.

We first take up contention No. 6. The not too forceful argument is that the Commonwealth's evidence created no more than a suspicion, and testimony offered by appellant cleared away that suspicion. Briefly the Commonwealth's proof showed that in Baxter precinct elections were generally held in Howard's garage. Appellant, duly appointed clerk, operated a restaurant next door to the Harlan Retreading Shop. The ballots and paraphernalia were delivered to him the night before the election, and he kept them in the rear of his place until the time of opening polls, about 6:00 a. m. Appellant concluded that the shop was more centrally located; more convenient and comfortable, and he opened there. Moore, Brayles and Graybeal had been appointed officers along with Cooper. They reported to the "usual place" and found no signs of election or notice that the election was to be held elsewhere. When appellant opened the polls he appointed Sargent, Johnson and Howard to serve instead of those named above. Some of these were undoubtedly identified with the wet faction. About 7:30 a. m. some of the dry voters learned that the election was being held at the shop, and upon going there they suspected that all was not well for their side and sent for the sheriff. He came, looked at and shook the box and said that he could not see anything wrong with it. At about 8:30 a deputy took appellant and the ballot box to the clerk's office. Later when the box was opened the count was 318 for the wets and none for the drys.

The county clerk testified as to the delivery of the box and paraphernalia to Cooper, and identified a large number of ballots found in the box, and gave the names (according to stubs) of persons to whom ballots had been (purportedly) issued. Without going into details, we cite instances showing fraudulent practices. Dave Smith did not vote but a stub bore his name; stubs bore the names of five women who had died long before the election. It was shown that stubs showed the names of sev-

eral men who were dead. Tom Howard, a voter in the precinct, said that the stubs showed that he and his son had been issued ballots; he did not offer to vote and his son was at the time in the armed service. Without further detail it was shown that the stub books carried an appreciable number of names of those who were at the time absent from the county or state. In the contest case, Jackson v. Bolt, 292 Ky. 503, 166 S. W. 2d 831, 833, dealing with this election, we said:

"The evidence shows conclusively that the grossest kinds of frauds were committed in the four precincts selected for attack by appellee, and that they were committed by x x x officers selected to represent the 'wet' forces. Appellants did not introduce any evidence in contradiction of the charges of fraud in these four precincts, and they candidly concede that the votes * * * except * * * 15 from Baxter * * *, were properly eliminated by the court."

Appellant admitted that he represented the wet forces; that he had received the boxes the night before the election, and gave his reasons for holding the election at the Retread Shop rather than at the usual voting place. He says he tacked up notices at "the usual place of voting," the evening before the election; that when he opened the polls no officers had appeared, and he appointed the persons named above to serve with him; that the voting began "a little after six o'clock, and the wet forces began to haul in the voters, and the voting continued until 8:30." He said that several "dry" voters appeared but did not offer to vote; they were angry because the voting place had been changed. He said that Sargent, acting as judge, had the registration book and would call off the names of the voters and he would write the name on the stub and issue the ballot; that he did not write the name of anyone unless Sargent called the name. Sargent testified that Cooper appointed him and he served as a "dry" officer, but declined to say how he voted. He said Cooper wrote up all the ballots that were written that morning. He testified that there was nothing in the box when voting began; the voters voted rapidly. When a voter came in he would give his name and check against the registration book. He did not know all the voters, but said that no ballot was placed in the box except that of a qualified voter.

On cross-examination Sargent admitted that "we examined the box, but could not see inside it," and that Cooper had all the paraphernalia. Other testimony for appellant was to the effect that the election, as long as it lasted, was regular. At no point in the transcript do we find effort to prove that persons who were shown to be absent actually voted. It is hardly necessary to say more than that there was sufficient proof of conspiracy and fraud to take the case to the jury and uphold the verdict; this conclusion disposes of contention No. (6).

We next take up point No. (3). The indictment accused appellant and Howard (respectively clerk and judge of the election) of forgery, charged in the descriptive portion with willfully, feloniously conspiring to make up and use a false poll book to be used in the election, and while the plan existed one or other of the two forged and wrote the names of H. B. Davis, and four or more others, and others too numerous to mention, on the stubs of the election ballots used in Baxter precinct, "when such persons neither voted nor offered to vote at said election." The indictment was drawn under sec. 1581 KS, which provides in substance:

Any officer who willfully * * * makes or aids in making or authorizes the making of any false or fraudulent poll book * * * shall be deemed guilty of forgery (and) confined in the penitentiary for not less than one year nor more than five years.

Section 1590, KS, provides that any person who counsels, advises, procures or aids in the commission of any of the offenses named in this article shall incur the penalty provided for committing such offense. KS sec. 2554c-7 makes the general laws in respect of violations applicable to local option elections.

Appellant does not contend, as was set out in motion for new trial, that the indictment charged two offenses, or that the court should have required election. It is mildly argued in brief that the indictment does not charge any public offenses, since it does not allege that the persons named in the indictment were voters, thus omitting from the indictment the gist of the offense, that names of voters were forged. This argument is without merit, since the gist of the offense is making up

a fraudulent poll book, and this may consist of placing thereon the names of persons who did not apply for a ballot. We held a similar indictment under the same statute good in Tackett v. Com., 285 Ky. 83, 146 S. W. 2d 937. See Wallace v. Com., 229 Ky. 776, 18 S. W. 2d 290.

Contention No. (4): Sargent, the judge of the election, was asked if he had been arrested on the morning of the election, and answered "No." He was then asked, "Have you ever been indicted for any offense in connection with the local option election?"; the court sustained objection, and it was avowed that he had not. The argument advanced is that had witness been allowed to answer "his evidence would have greatly strengthened the testimony of appellant." It is clear that the purpose in asking this question was not to throw any light on the question of guilt or innocence of appellant. While the question was totally irrelevant, we fail to see how the answer, whether affirmative or negative, could have affected the weight of appellant's testimony. Whether error or not, it was not prejudicial to appellant's rights, nor vital to his defense; the character of the witness was never put in issue. Civil Code of Practice, sec. 599.

Our conclusions are the same in respect of contention No. (3). The indictment charged the false writing of the names of H. B. Davis and others (by name), and "other persons too numerous to mention." The Commonwealth after proving that those named in the indictment were dead, or absent on the day of election, took the stub book and asked, for instance, if Dave Smith, who was a resident of Baxter precinct, voted on the day of election, and the answer was that he had not. This process was carried out with respect to many other persons whose names appeared and who for one reason or another were shown not to have voted, and this without objection. When Tom Howard was asked whether he voted or offered to vote, there was an objection "because his name is not mentioned in the indictment." The court overruled. The same procedure was had with like results when several others were asked a like question. At a later point in the trial counsel for appellant moved, unsuccessfully, to withdraw from the jury testimony in regard to the writing of names of persons on the stub book, except those mentioned in the indictment.

Argument of counsel is that appellant did not "come

into court prepared to meet the charges that he had forged two dozen or more names on the poll books whose names did not appear in the indictment." It is argued that sec. 124 of the Criminal Code of Practice among other prerequisites to a good indictment, provides that it must with certainty charge the offense, and the evidence must be limited to that offense, so that a trial should constitute a bar to a subsequent prosecution for the same offense. We held in Com. v. Duff, 87 Ky. 586, 9 S. W. 816, that making up a fraudulent poll book constituted a single offense, even where there had been entry of one or more votes, or of votes for several candidates for office. It was competent to show that the names of other persons were falsely written; the rule is that offenses other than as charged in the indictment are admissible to show the execution of a plan, system, or scheme of operations. Conley v. Com., 273 Ky. 486, 117 S. W. 2d 189; Hedger v. Com., 294 Ky. 731, 172 S. W. 2d 560; Marcum v. Com., 254 Ky. 120, 71 S. W. 2d 17.

Contention No. (2) is that the Harlan court had erroneously transferred the indictments to Wayne County, first, because appellant was not served with notice of the motion for a change, and that under the statutes it was error to transfer to a county not adjacent to Harlan. The first point may be disposed of by pointing out that sec. 1112, KS, under which the transfer was made, does not require notice, and we so held in Blanton v. Com., 210 Ky. 542, 276 S. W. 507. This case, to some extent, shows a difference in procedure when the change is sought under KS secs. 1109, 1110 and when sought under KS sec. 1112, and this brings us to the contention that it was the duty of the Judge to direct the change to an adjacent county. This section provides that when the Judge is satisfied from his personal knowledge, and statement of the Commonwealth's attorney, that a fair trial cannot be had, the indictment may be transferred to "some other county in which a fair trial can be had." The section omits the words "adjacent county," and the words "if the judge is satisfied that a fair trial can not be had in an adjacent county, he may order the trial to be had in the most convenient county in which a fair trial can be had."

The contention is that the two sections must be read together, but counsel cites no case holding to that

effect, and we have been unable to find one. On the contrary, one of the cases strongly relied on by appellant indicates that the sections are not to be read together. In Keeling v. Com., 178 Ky. 624, 199 S. W. 789, 791, the motion for transfer was made by the Commonwealth under sec. 1109 KS. It was there argued that the statement filed by the Commonwealth's attorney was not sufficient to authorize the transfer, hence the transferee court was without jurisdiction. The court quoted and thoroughly analyzed the sections of the statute relating to changes, and said, after reference to secs. 1109 and 1111:

"After making provision in sections 1109 and 1111 for the removal of a prosecution on motion of the commonwealth apparently sufficient to meet the exigencies of every condition that might come up, the Legislature enacted section 1112 * * *, making provision for a state of affairs the existence of which it seemed to think might not authorize a change of venue under section 1109. The application, however, * * * was not made under section 1112, but under section 1109. * * * In order, therefore, to give substantial meaning and effect to the constitutional as well as statutory design that each party shall be heard before an impartial jury, it is the duty of the judge, when he is satisfied by the petition of the attorney for the commonwealth that such a trial as is contemplated by the Constitution and Statutes cannot be had in the county in which the prosecution is pending, to transfer it to another county." (Citing cases.)

At another point the court said: "It is only when it plainly appears that the discretion thus lodged in the judge has been abused that this court will interfere with his ruling ·in either granting or refusing a change of venue. This point has so· frequently been ruled as to make superfluous citation of authority."

The same (discretionary) rule applies where there is, as here, motion to remand. It is unnecessary for us to undertake to distinguish the cases cited by appellant on the question of error in removing to a nonadjacent county. Perhaps the strongest of these is Conley v. Com., 229 Ky. 358, 17 S. W. 2d 201. This was referred to in Manning v. Baxter, Judge, 281 Ky. 659, 136 S. W. 2d 1074, 1076, and citing the Conley case, we said: "It is true that a change of venue can only be sustained to a

nonadjacent county where objections are taken and sustained to all adjacent counties." These two cases, as do others cited by appellant, develop that the applications for changes were made under sections of the statute other than sec. 1112, hence are not controlling here.

It is further noted that appellant made only general objection to the Harlan court's order of removal. There was no specific objection to Wayne County, nor did accused make any suggestion until later that it would better suit him to have the court name an adjacent county. In this state of case he should not be heard to complain, since he has at no stage shown that the court abused discretion. Layne v. Commonwealth, 271 Ky. 418, 112 S. W. 2d 61.

The next contention is that the court erred in overruling motion to remand to Harlan. This is based on the fact that appellant, after notice to the Commonwealth, filed in support of his motion numerous affidavits of residents of Harlan, and introduced several witnesses who testified orally. The tenor of the proof was that since the time of the transfer the situation in Harlan had materially changed; that all bitterness engendered by the election has subsided, the election forgotten; all had been forgiven. It may be that if the situation had bettered, the removal had some good effect. All the affidavits and the oral proof concluded that both parties could now have an impartial trial in Harlan. It is not contended by the Commonwealth that there was any controversion of this testimony, and on this ground it is argued that the court abused discretion in overruling the motion. We do not think such a conclusion necessarily follows. It is unnecessary to cite authorities holding that in matters relating to a change of venue, the court has discretion, not only as to the question of whether or not the removal should be had, but that the "selection of the county to which the case is to go * * * cannot be interfered with by this court, 'unless it is made to appear with reasonable certainty that there was error upon the part of that court in its decision on the question.'" Commonwealth ex rel. v. Carnes, 125 Ky. 821, 102 S. W. 284, 286. If this be so as to original removals, it follows that the same rule, and in a broader sense applies to retransfers; a reading of the statute indicates that a wider discretion is vested in the court in such cases. A retransfer is to be

allowed where transfer is under sec. 1112, when the Judge is satisfied from personal knowledge, or reliable information that the conditions existing at the time of removal no longer exist. At this point it would not go far afield to assume that the Judge was familiar with opinions of this court in Harlan election cases where fraud was shown to have been common, both prior to and since the involved local option election, and perhaps the recent case where through admitted fraud on the part of officers, the census of 1940 was vitiated. However, aside from this the court had before it the record in the case of Commonwealth v. Cooper, in which, in attacking the original removal, an appreciable number of those who filed affidavits in the instant case, saying the situation had changed for the better, had positively said that when removal was ordered, there existed no bad situation. Again a reading of the cross-examination of those who testified orally, tend to show that while there had been a decrease in the number of homicides in the county, there still existed such a situation as would tend to indicate that there would be difficulty in having a trial free from the difficulties which brought about the original transfer. Upon review of the record we are not prepared to say that the Judge abused discretion in denying remand. The fact that excitement had subsided did not necessarily overcome the fact which is shown by the record that the regular and special judges in the Harlan court had made good faith efforts to give fair and orderly trial, but that such effort had been thwarted by the dilatory practices indulged by accused, these methods, according to two records, being attempted in the Wayne court up to final trial.

The last complaint goes to the instructions. The court correctly defined criminal conspiracy and other technical terms, and instructed the jury to find defendant guilty if they believed from the evidence beyond a reasonable doubt that appellant committed the denounced acts, or entered into a conspiracy to make and made a fraudulent stub book, or aided or abetted in so doing, he should be found guilty and his punishment fixed at from one to five years imprisonment, the penalty fixed by the statute in any one of the events. One complaint is that the instructions, as a whole, were vague and confusing. While perhaps not drawn as clearly as might have been, they as a whole present in an understandable way the

issues raised by the indictment and proof, which, as we view it, was sufficient to maintain the charge of conspiracy and the overt act on the part of appellant.

The chief contention is that while the indictment charged a single offense, the court by instructions split the offense, or carved out two non-joinable offenses; forgery, the offense denounced by the statute, and conspiracy under which the overt act was committed. Counsel for appellant has not tendered any authority. That the indictment charged a single offense is manifest. Simmons v. Commonwealth, 263 Ky. 171, 92 S. W. 2d 68, and cases cited. This being so, and the proof bearing out the one charge, it was not error to instruct the jury as to the different means by which the offense might have been committed. Criminal Code of Practice, sec. 176, and Simmons case, supra. It is the rule that the court should give instructions on every phase of the case deducible from the evidence, and we have held that acts showing or tending to show conspiracy to do a felonious act may be proven, even though the indictment failed to expressly charge a conspiracy, and if the proof warrants it, an instruction on conspiracy and aiding and abetting. Ray v. Commonwealth, 230 Ky. 656, 20 S. W. 2d 484, 66 A. L. R. 1297. Under the principles announced we are unable to agree that the instructions were erroneous.

It will be observed that the majority of the contentions argued are based on claimed technical errors; it is not argued that the jury trying the case was biased, prejudiced or unfair. The proof is sufficient to show that the statute was willfully violated, and the only defense is that as far as the election went, it was fairly and legally conducted. The facts and circumstances show otherwise, and point to appellant's participation.

Judgment affirmed.