## Greenwell v. Commonwealth.

October 11, 1946.

Dan S. Arnold and E. E. Hubbard for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Hugh Greenwell, was indicted by the grand jury of Nelson County in which he was accused of wilfully and maliciously cutting and wounding Wardie Downs with the intent to kill him, but from the effects of which he did not die.

The offense was committed in the city of Bardstown on a day in August, 1945, but the indictment was not returned until the regular term of the Nelson circuit court in October, 1945. The verdict of the jury finding appellant guilty fixed his punishment at seven years' confinement in the penitentiary. The court overruled appellant's motion for a new trial followed by this appeal to this court.

The only grounds argued for reversal are two alleged errors contained in the motion for a new trial, which are, (1) the court erred in overruling appellant's motion for a continuance, and (2) improper remarks made by prosecuting counsel in his closing argument to the jury.

A brief but succinct statement of the facts are: Appellant and his victim met, or were together, at Jay's

hamburger place. After briefly conversing Downs left and went into the restaurant of Francis Lasley located on Main Street in Bardstown. He was soon followed by appellant who proposed that they shoot craps, but Downs declined, on the ground that he had no money with which to play that game. According to Lasley, who was not immediately present, but in the same room, the two engaged in a controversy sufficient to attract the attention of the witness, but he was unable to tell how it commenced. However, he did see Downs strike at or toward appellant, accompanied by the threat that, ''I will cut your throat.'' It was afterward found that Downs did inflict a small wound on the wrist of appellant, who testified that he did nothing or said anything to provoke the unjustified assault on him by his later victim. He was sustained in that contention by Hiram Smith. Lasley, after discovering that the parties appeared to be angry toward each other, ordered Downs to leave the premises, which he did, starting toward the next corner of the square near which there was located another restaurant, referred to in the record as Tom Pig's. On the sidewalk in front of that restaurant were the Commonwealth's two witnesses, Dave (Lib) Cox and Gilbert Morton. Downs—who was considerably intoxicated, as was also appellant, Greenwell—approached them and stooping over with his hands on his knees, made inquiry as to where he could find a policeman, saying at the time that he had wounded appellant in a difficulty and wanted to surrender. While he was thus talking to Cox and Morton, appellant approached him from the rear traveling in the street, and without saying a word and with an opened knife in his hands, reached over and cut the throat of Downs. Thirty-nine stitches were required to close the wound and four more were required later.

Lasley in testifying stated, that when appellant left his restaurant he, the witness, followed him to the door out and on the pavement when he saw appellant start across the street toward the hotel on the opposite side, and that when he arrived at about the middle of the street he looked down in the direction of Tom Pig's toward which Downs traveled after leaving Lasley's restaurant; that upon seeing Downs in front of Pig's restaurant appellant turned and started in that direc-

tion, approaching his victim from the rear while the latter was standing in a stooped position.

Defendant, who was the only witness who testified at the trial in his behalf as to what occurred at the time of the cutting, said that on leaving Lasley's restaurant he did not travel to the middle of the street in front of it toward the hotel as testified to by Lasley, but that he did walk in the street down to where his victim was, intending to consult a physician for the treatment of his wound inflicted by Downs in Lasley's restaurant, and that as he approached, Downs said to him, "You want some more of it?" He then said, "and that's when I opened my knife, and it *looked like* he made a step toward me." (Our emphasis.) He was positively contradicted as to what occurred at the time by Downs, the two prosecuting eyewitnesses, as well as by Lasley in his testimony as above related. The two grounds will now be disposed of in the order named.

(1) The continuance was sought on the ground of the absence of one Robert Stiles who was then indefinitely absent and located in the State of Florida. The affidavit stated that Stiles, if present, would state that he was present with Downs, Cox and Morton in front of Pig's restaurant and that as appellant approached "Downs raised up and said something that *sounded like*, 'Hugh, do you want some more of it' and that Downs then made a step toward Hugh as if he were going to attack him and that Hugh then made a leap toward Downs and that there was a short scuffle and that to *the best of my knowledge,* that in that fight Downs was cut." (Our emphasis.) He further stated that, "both men showed every indication of drinking and that both of them were mad and were in a fighting mood." At this point we deem it appropriate to say that the witnesses, Cox and Morton, both stated that Stiles, the alleged absent witness, was not present when the crime was committed or if so they failed to discover his presence.

The court declined to continue the case on account of the absence of the alleged witness, Stiles, but permitted defendant to read the affidavit as his testimony, the court telling the jury that it should accept his alleged testimony the same as if it were given by him in court in person.

There are a number of cases construing section 189

of the Criminal Code of Practice as amended by Chapter 57, page 244 of the Acts of 1920, which amendment authorized the court in the exercise of its sound discretion to refuse a continuance in the trial of a criminal prosecution because of absent witnesses, and to permit the testimony of such absentees as set out in the affidavit for a continuance to be read to the jury, which was not permitted prior to the enactment of that amendment. Since then a large number of criminal prosecutions wherein the defendant on trial sought a continuance because of absent witnesses have been considered by this court, and in every one of them we held that it was not error for the court to overrule the motion for a continuance and to allow the testimony of the absent witness as contained in the affidavit to be read to the jury, unless the testimony of the absent witness was so important as to be of great weight in determining the issue of guilt or innocence, and the other circumstances were such that it was a manifest abuse of discretion to overrule the motion, and especially so when it appeared that there was a probability of obtaining the attendance of the witness at a future trial.

Numerous cases are cited in the notes to the Code section substantiating what we have said, and some later ones are: Shelton v. Commonwealth, 280 Ky. 733, 134 S. W. 2d 653; Toler v. Commonwealth, 295 Ky. 105, 173 S. W. 2d 822 and Day v. Commonwealth, 296 Ky. 483, 177 S. W. 2d 391. Others are cited in those opinions. The only case relied on by appellant's counsel in their brief filed in this court is the Shelton case which was a conviction of appellant for murder and in which the death penalty was given. The testimony in that case was largely circumstantial. A prosecuting witness testified for the prosecution as an expert in the art or science of fingerprinting. He stated that he discovered those of Shelton upon places and objects where the crime was committed which clearly pointed to the defendant's guilt of the offense with which he was charged. The witness gave the institution at which he was tutored in that art and from which he was graduated. Counsel for defendant ascertained that there was no such institution and contended that the prosecuting witness was an impostor and was at most only an amateur in his ability to read fingerprints. Defendant desired and moved for time to develop such facts concerning the qualifications of that

alleged expert, but the court overruled the motion and because of which we reversed the judgment of conviction. We have no such case here.

The testimony of the alleged absent witness, Stiles, was nothing more than cumulative in supporting that given by appellant in his account of how and under what circumstances the cutting and wounding occurred. In numerous like cases cited in the above listed ones and those cited to section 189 of the Criminal Code of Practice, we have universally held that the overruling of the motion for a continuance and permitting the affidavit filed therefor to be read as the testimony of the absent witness, is not such an abuse of discretion as to authorize a reversal of the convicting judgment when the testimony of the absent witness is only cumulative to that which was given by other witnesses testifying to the same facts. But when the absent witness is an expert, or his testimony vitally important, and he testifies to a material fact not proven by any of the witnesses present and testifying, it has been held by us that under some such circumstances it would be an abuse of discretion by the court to refuse a continuance and thus deny the litigant an opportunity to produce such material proof.

(2) The second and only other ground argued in brief for a reversal of the judgment is that the Commonwealth's attorney in his argument to the jury said: "He (the defendant) has disabled this man so that he will never be able to speak again." (Our parenthesis.) That fact was demonstrated on the trial when the prosecuting witness was unable to speak and gave his testimony only by signs and gestures. Nothing at that time had been developed to show that the witness was able to speak at any time following the commission of the crime upon him. It is true that affidavits of some alleged newly discovered witnesses stated that on one occasion following the infliction of the wound Downs was able to speak, but that fact was unknown to the attorney when he made the complained of statement in his closing address to the jury. Neither was there anything to show how long that occasion was before the trial or how soon after the infliction of the wound, the final effects of which may have been total loss of speech.

Finding no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.