# Howard v. Commonwealth.

February 28, 1947.

S. M. Ward, Judge.

Will C. Hoskins and William Dixon for appellant.

Eldon S. Dummit, Attorney General, H. K. Spear, Assistant Attorney General, and A. E. Cornett, Commonwealth Attorney, for appellee .

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Appellant, Estill Howard, was jointly indicted with his brother, Will, and his father, Jack, for the murder of Charles McKinney by cutting or stabbing him with a knife. Upon a separate trial Estill was convicted of manslaughter and his punishment was fixed at confinement in the penitentiary for 21 years. He asks that the judgment be reversed because: 1. The verdict is flagrantly against the evidence and a peremptory instruction should have been given in his behalf; 2. the court erred in not giving the whole law of the case and in improperly instructing the jury; 3. the court erred in permitting the Commonwealth to introduce evidence in chief after the defense had closed; 4. the proof did not show the homicide was committed in Leslie County where the trial was held.

The evidence shows that Estill's home is located from 100 to 200 yards from a point known in this record as the "double bar gap." His father's home was about 20 steps from Estill's and Will's home was some 200 yards from Estill's home. In the late afternoon of June 19, 1946, Farmer Sizemore (a brother-in-law of Jack and an uncle of the other two defendants) and his son-in-law, Charles McKinney, were firing a pistol at or near the "gap" and some of the bullets whizzed over Estill's house and one struck it. Estill did not know who was doing the shooting, but he got his .22 calibre rifle and returned the fire from his house. Then he started for the "gap" taking his rifle along, and as the pistol fired he returned some of the shots with his rifle on his way up the mountain. Hearing the shooting, Will and Jack Howard also started for the "gap." Both were unarmed, although Jack had a pocket knife.

There had been no trouble or bad feeling among any of these men, but when Estill got to the "gap" he saw Sizemore with a pistol and testified that the latter shot at him and said, "Drop that gun and get through those bars," kicked him and hit him with a pistol. Sizemore and Estill then clinched and "went down in a tussle." Jack and Will arrived about this time. Sizemore's son-in-law, McKinney, picked up Estill's rifle and attempted to strike Estill but missed him and landed a severe blow on Sizemore's head, which put the latter out of the fight. As McKinney drew back the rifle to

strike Estill, Jack testified that he ran in and stabbed McKinney in the side with his knife and he fell mortally wounded.

Estill and Jack testified that the former never touched McKinney but his fighting was all directed at Sizemore, and Jack further testified that he stabbed McKinney to prevent him striking Estill with the rifle. However, Will testified, "He (McKinney) was in the tussle. * * * He was kindly in the scramble" and that Estill, Sizemore and McKinney were "right close together."

Sizemore's testimony is that he and McKinney were trying out a pistol, that day purchased, by shooting at marks and trees and the bullets were not going in the direction of Estill's house; that the three Howards got to the "gap" about the same time and Jack asked him why they were shooting like that, to which he replied, "We ain't bothering nobody." Thereupon, Estill shot him in the face with the rifle and then the three Howards ran in on him and McKinney, and Estill knocked him (Sizemore) down with the rifle and then "stomped" him. Sizemore did not know which of the Howards stabbed McKinney, as they were all engaged in a tussle, but he heard McKinney holler, "Turn me loose, what have I done to you—I don't even know you;" and with that they all went to the ground.

From this resume of the evidence it is patent that the verdict is not flagrantly against the evidence. Also it is plain that appellant was not entitled to a directed verdict.

To constitute one an aider and abettor in the commission of a crime, he must be actually or constructively present at the time of its commission and render assistance or encouragement to the perpetrator. McKinney v. Com., 284 Ky. 16, 143 S. W. 2d 745 and authorities therein cited. According to the testimony of Sizemore, Estill and the other two Howards were engaged in a melee with McKinney at the time the latter was stabbed and this was sufficient to support an instruction as to whether or not Estill was an aider and abettor.

Sizemore testified that he did not know who did the cutting and stabbing. Will's testimony did not indicate that Estill wielded the knife, and the latter denied that

he cut or stabbed deceased. Jack testified that he was the one who inflicted the fatal knife wound on McKinney. These were all the witnesses who testified as to what transpired at the time of the killing, hence it is clear there is no evidence upon which to base an instruction that Estill actually did the killing and it was prejudicial error for the court to tell the jury to find Estill guilty if they believed he killed deceased by cutting or stabbing him. The instructions in every case should be based on the facts proven. In Steeley v. Com., 129 Ky. 524, 112 S. W. 655 and Macom v. Com., 302 Ky. 136, 194 S. W. 2d 169, judgments of convictions were reversed because the court submitted to the jury the question of the defendants' guilt as principals when the evidence only connected them with the crime as aiders and abettors. For this error the judgment in the instant case likewise must be reversed. If the evidence is substantially the same on another trial, the court will submit to the jury only the question of whether or not Estill aided or abetted Jack in the killing of McKinney and will not submit the question of whether he did the actual killing.

Appellant cites Cook v. Com., 86 Ky. 663, 7 S. W. 155; Wright v. Com., 85 Ky. 123, 2 S. W. 904; Hendrickson v. Com., 232 Ky. 691, 24 S. W. 2d 564; Burks v. Com., 254 Ky. 193, 71 S. W. 2d 418; Williams v. Com., 254 Ky. 277, 71 S. W. 2d 626, as sustaining his contention that he was entitled to an instruction on the defense of his home. An examination of these authorities shows that they do not apply to the instant case. They lay down the rule that one may not only defend his home from a forcible entry made for the purpose of committing a felony or of inflicting great bodily harm or violence on a person in the home, but also that an attack made with firearms for any such purpose may be repelled. But no case, so far as we know, permits one to leave his premises and go a distance of 150 or 200 yards to the land of another and kill a person who had shot into his dwelling and then avail himself of an instruction on defense of home. Had Estill killed McKinney with a rifle shot from his house or premises while his house was being shot at or into, he would have been entitled to such an instruction. But at the time of this homicide all shooting into or towards Estill's home had ceased and

the fact that the difficulty arose over the former shooting was no ground upon which to base an instruction in defense of home.

The chances are that on another trial the third ground of complaint—that the Commonwealth was permitted to introduce evidence in chief after the defense had closed—will not occur; therefore, we will devote but little space thereto. Under sec. 224 of the Criminal Code of Practice, as construed by this court, the trial judge has considerable latitude in permitting either party to introduce evidence in chief after the other has closed, and it is only where he abuses such discretion to the prejudice of the substantial rights of the defendant that it becomes reversible error. McClain v. Com., 284 Ky. 359, 144 S. W. 2d 816. Here, appellant could not have been prejudiced by the testimony of the nurse, Audrey Dyer, who described Sizemore's wounds which corroborated Sizemore's testimony that appellant had engaged in the melee and tended to prove that he aided and abetted in the killing of McKinney. This testimony was but cumulative as Sizemore had testified to practically the same facts as did the nurse.

Nor is there merit in appellant's contention that the evidence did not show the homicide was committed in Leslie County where the trial was held. The testimony of Sizemore is to the effect that the killing occurred within one and a half miles of Hyden. This court takes judicial knowledge of the geography of the State and we know that Hyden is the county seat of Leslie County and is so located as to bring any place within a mile and a half of Hyden within the confines of Leslie County. White v. Crouch, 280 Ky. 637, 133 S. W. 2d 753. This is another question that will likely not arise on a second trial.

The judgment is reversed for proceedings consistent herewith.