# Hobbs v. Commonwealth.

October 17. 1947.

Rehearing denied December 19, 1947.

Ray C. Lewis, Judge.

Lewis & Weaver for appellant.

Eldon S. Dummit, Attorney General, Guy H. Herdman, Assistant Attorney General and S. V. Little for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— . Reversing.

The appeal is by Paul Hobbs, who was convicted of voluntary manslaughter, with a penalty of 21 years' imprisonment, for the killing of Tom Swafford, in Clay County, on November 18, 1946.

The appellant was indicted jointly with his father,

Finley Hobbs, on the charge of murdering Swafford pursuant to a conspiracy; also, each was charged as principal and as aider and abettor, one of the other. A motion of the Commonwealth for a change of venue was sustained and the case transferred to Laurel County, where there was a severance.

The appellant claims it was error to grant the change of venue. The affidavit of the Commonwealth's attorney, supported by two other citizens, is in substance that the accused, Finley Hobbs, is a magistrate of Clay County and a man of wide influence; the defendants are related by blood or marriage to three of the most prominent and influential families in the county; and they themselves are well-known and have relatives scattered throughout the county. It is further stated that there had been many homicides and other crimes committed in the county in recent years, and because of the lawless conditions it had been difficult and almost impossible to secure arrests and convictions; that upon recent trials of criminal cases the many persons who were under charge and their friends had gathered at the courthouse and brought their combined influence and acquaintance to bear in the selection of juries for the trial of others. As a result of these conditions, it was alleged, the Commonwealth could not have a fair trial.

The defendants introduced several witnesses, including two other magistrates and the sheriff, who testified that there was no more talk about this case in their respective communities than about other homicides; and while they knew or had heard of the kinship of the defendants to the several influential families, yet they believed a fair jury could be obtained. However, some of the witnesses qualified their statements by admitting it would be difficult to get a jury by "going to the wheel." One of them, who was very strong in his views, stated that he had discussed the facts of the case with fifty to one hundred men, yet he regarded every one of them as qualified jurors!

The judge is given statutory authority to transfer a case to another county for trial when he is "satisfied from his own knowledge and from the written statement of the Commonwealth's attorney of that district that

such a state of lawlessness exists'' in the county, that a fair trial cannot be obtained. KRS 452.230. This factor, combined with the proof of probable difficulty in obtaining a fair jury by reason of the family connections and influence of the defendants, warranted the court's action. We are of the opinion that no error was committed in granting change of venue. Cooper v. Commonwealth, 300 Ky. 770, 189 S. W. 2d 949.

The appellant contends he was entitled to a directed verdict of acquittal. There is no merit in the contention. The evidence may be briefly summarized. The deceased, Tom Swafford, and his cousin Carl Swafford, who was killed at the same time by the appellant, had been together at their respective homes on Otter Creek that morning. Tom was preparing to go to work next day at a mine in another part of the county, and Carl had a bus ticket to Cincinnati where he intended to go and join his wife. After dinner they went with George Sizemore to Hima, about four miles away; thence in a taxicab with Sam Curry three or four miles farther, where they got out near the home of Finley Hobbs with whom his son, the appellant, lived. He· was then eighteen years old. The mothers of the two Swafford boys and both of these witnesses testified that they were not drinking and had no weapons. About the time they got out of the car Finley Hobbs came walking down the road and the three men stopped on the bridge and talked a few minutes, then Hobbs went to the house. So far there is no conflict in the evidence except the testimony of the defendant's mother that the Swafford boys took a drink down near the bridge and testimony of an undertaker and officer that they found some moonshine whiskey on or near their bodies, which, however, the circumstances indicate may have been ''planted.'' Why these men went to Hobbs' home is not shown except by inference from the testimony of the defendant's mother and sister, that when they came to the house they wanted to know where Squire Hobbs was, cursed him and said that ''he had some stuff on the books he had to take off,'' perhaps meaning some charges against them on his docket as a justice of the peace. Squire Hobbs did not testify.

The conviction rests on the testimony of Ed Owens,

his wife, son, daughter and brother-in-law, who lived 75 to 200 yards away and who were not friendly with the Hobbs family. Their story is very indefinite for the witnesses were not in position to see all that occurred. Their attention was first attracted by four or five shots, some of which were louder than others, as if fired by two pistols, although their testimony on this point is vague. The substance of their evidence is that one or more of them saw the appellant, Paul Hobbs, between the corner of the house and the front gate, shooting in the direction of the gate, and later in the yard with a pistol in his hand and going over the fence. They did not see at whom he was shooting. Then they saw the body of one of the men at the gate (shown by other evidence to be Tom Swafford) and another man (Carl Swafford) going around the house, bent over with his hands on his stomach. They next saw Finley Hobbs on his porch fighting or struggling with his wife and striking her in the face. Paul, or a younger son, was trying to stop him. The time is variously fixed at from one or two minutes to ten to fifteen minutes after the shooting. Then Finley Hobbs looked towards the Owens home and proceeded to curse Owens violently and tell him to "keep your nose out of this." After that, some of the witnesses say, Finley was in the yard throwing rocks at his wife. When it was developed on cross-examination that this occurred after Paul had been arrested and the two bodies had been removed, the court properly admonished the jury to disregard that evidence. But objections to the testimony as to what Finley Hobbs did shortly after the shooting were overruled. When the officers came to the house, Paul told them he was the man they were looking for, but it does not appear that he told them why he had killed the men. Tom Swafford was shot near his right breast and the bullet came out under his arm. He was also shot in the back. This is a summary of the most material and essential proof of the Commonwealth as to the immediate occurrence.

After the appellant had been taken to jail, his father went there. According to testimony introduced by the Commonwealth, Finley Hobbs was drunk and boisterous and demanded that his son be turned loose. The father had not then been arrested but while there a warrant

of arrest was served on him charging him with the homicide. The chief of police of Manchester was sent for and undertook to quiet Finley Hobbs. The appellant, Paul Hobbs, was sober and there is no evidence that he was drinking at any time. Two witnesses testified that Finley Hobbs was in the habit of carrying a 45 pistol in a holster on his person. The defendant's objections to all of this testimony were overruled.

The story of the appellant, supported by his mother, sister and brother, is that he was at work on the porch of their home, fixing the windows; when the Swaffords came inquiring for and cursing the Squire, Mrs. Hobbs told them he was not there and asked them to go away; one or the other of them cursed her, and Tom Swafford picked up a brick and struck Mrs. Hobbs; then Carl Swafford picked up a hammer and struck at Mrs. Hobbs with it. Appellant testified that he ran into the house and got his father's pistol. When he got back on the porch the Swaffords had knocked his mother down the porch steps and had hold of her shoulder. He shot and killed both men in defense of his mother.

There are details and circumstances from which reasonable inferences may be drawn that there was no such clear-cut justification for the killing.

The defense witnesses testified that when Finley Hobbs left the Swafford boys in the road, he had gone through the house and out to his barn, up the hollow, and came back after the shooting ceased. They denied positively that he had any difficulty with his wife at any time and say that her nose was bloodied by being struck by Tom Swafford. The evidence as to Finley's conduct at the jail was also contradicted.

The instructions properly omitted any reference to the homicide having been committed pursuant to a conspiracy, for there was no evidence to support such hypothesis. The instructions did authorize the appellant's conviction if the jury believed from the evidence beyond a reasonable doubt that he himself shot and killed the deceased or that Finley Hobbs had done so and the defendant had aided and abetted him.

We do not find any evidence tending to prove that Finley Hobbs killed Tom Swafford. The instruction

must be regarded, therefore, as prejudicially erroneous. Hagan v. Commonwealth, 179 Ky. 201, 200 S. W. 336. We have recently held an instruction which authorized conviction as a principal where the evidence tended to prove that the accused was guilty of aiding and abetting another was reversible error. Howard v. Commonwealth, 304 Ky. 149, 200 S. W. 2d 148. The legal principle is, of course, the same where the conditions or the relation to the commission of the crime is the converse.

It was apparently upon the theory of participation and res gestae that the court ruled to be competent the evidence of Finley Hobbs attacking his wife on the porch of his home shortly after the shots were fired and of his threatening the Owens family. None of the Owens family claimed they saw Finley there until after the shooting, and, as we have related, his own family testified positively that he was not present at the time. If there had been any evidence to sustain the theory of Finley's participation in the commission of the crime, all of this, or at least all except those threats, would have been competent as res gestae. As it was, this conduct of Finley Hobbs was not connected with or illustrative of the homicide. There was no evidence of concert of action. The crime had already been committed.

However, since the defendant's evidence was that Finley Hobbs was not present and that the appellant shot Tom Swafford while his mother was at the foot of the steps, being assaulted by the two men, the evidence of the Owens family, or a substantial part of it, concerning the presence of both Finley and his wife on the porch immediately after the shooting and of his striking her, causing her nose to bleed, would have been competent in rebuttal under a proper admonition as to its purpose of contradiction. But as it came into the case as substantive proof and was calculated to inflame the jury, we are constrained to hold that its admission constituted prejudicial error.

The evidence that just before Finley Hobbs had come home he had gone into the country and stayed in a store for a while was irrelevant. This was introduced at the beginning of the trial and the court doubtless presumed it would become relevant under the charge of

conspiracy. It could not have been prejudicial, but the court should have withdrawn its consideration from the jury. Of like character is the evidence that Finley Hobbs was in the habit of carrying a pistol. Evidence as to what he did at the jail was not competent and should have been rejected. Whether this was prejudicial or not, we express no opinion.

For the reasons stated, the judgment is reversed.

Judge Thomas dissenting.

In briefly stating my reasons for dissenting from the opinion of the majority of the court I will confine myself strictly to the facts of this case, one of the most important of which is that appellant admitted at his trial while testifying in his own behalf that he, himself, and alone, committed the crime with which he was charged and convicted by the verdict of the jury. He was corroborated by his mother, and no one denied that testimony. The opinion holds that there was no evidence tending to show that appellant's father participated in any manner as aiding and abetting him to commit the crime, and no one testified that the father did so aid and abet his son, or that the father acted as principal, not even the father himself who was not introduced. It is therefore perfectly plain beyond all possibility of doubt that appellant did not commit the crime with which he was charged in any other capacity than that of principal.

The theory of the opinion is that the jury may have convicted appellant as an aider and abettor of the principal, whomsoever he may have been, and who the Commonwealth contended in this case was his father. We have seen, however, that the testimony in the case disproved completely that possibility, and which the majority opinion so holds.

In such circumstances it appears to me that it would require a jury composed of morons to find appellant guilty as an aider and abettor instead of as principal. In order for the jury to have returned such a verdict they would be compelled to arrive at that conclusion upon no testimony whatever to support it, and in the face of the express sworn confession of the appellant that he was the principal and committed the of-

fense as such, but sought to be excused therefor on the ground of self-defense. It is impossible for me to conceive of any theory upon which the verdict of guilty could be predicated, except on the ground that appellant was the principal, and it was upon that conclusion of the jury that it convicted him.

The cases relied on for a reversal of the judgment because of error in giving an instruction on aiding and abetting are: Steeley v. Com., 129 Ky. 524, 112 S. W. 655; Hagan v. Com., 179 Ky. 201, 200 S. W. 336; Macom v. Com., 302 Ky. 136, 194 S. W. 2d 169, and Howard v. Com., 304 Ky. 149, 200 S. W. 2d 148. In a more or less brief reading of those cases I do not find where appellant in them confessed that he alone was guilty of committing the involved felony as principal and sought to be excused therefrom on the ground of self-defense, as is true in the instant case. I am therefore forced to conclude that the only ground for reversing the judgment, as stated in the opinion, is so completely groundless as to require its promotion in order to be classified as fallacious.

I admit that there was no room in this case for the aiding and abetting instruction, but I conclude that it was merely surplusage, of no material effect, and could not have possibly influenced the jury in arriving at its verdict of guilty. On the contrary the road leading to the conclusion that appellant was guilty only as principal was broad and unobstructed.

However, if the facts in the cases supra upon which the reversal is based, were complete in every respect on all fours with those in this case, then they should be overruled as being glaringly erroneous and should be given no stare decisis effect as precedents.

The question in this case relates only to the practice or procedures employed at the trial, as was true in the case of Nugent v. Nugent, 281 Ky. 263, 135 S. W. 2d 877. This court in many cases has held that the stare decisis doctrine should be given less force and effect when only questions of that character are involved, than in overruling former opinions wherein property rights are involved. Liberty National Bank & Trust Co. v. Loomis et al., 275 Ky. 445, 121 S. W. 2d 947, 131 A. L. R. 1419; Payne v. City of Covington, 276 Ky. 380, 123

S. W. 1045, 122 A. L. R. 321. In those two cases, and other domestic ones cited therein, as well as foreign ones, it is pointed out that the doctrine is never absolutely mandatory in any state of facts so as to handcuff or muzzle courts by forcing them to perpetuate error, thus depriving them of authority to correct it. However, when property rights are acquired before the former opinion, or opinions, were overruled, the effect of the overruling opinion should have only a prospective effect, but the reason for that qualification does not apply to the facts of this case.

However, if the opinion as appears on its face was reached by adherence to the stare decisis doctrine then the judgment herein should have been affirmed, since in the case of Caudill v. Com., 155 Ky. 578, 159 S. W. 1149, 1151, it is expressly held that the giving of the aiding and abetting instruction, though erroneous because of no evidence to support it, was not prejudicial so as to authorize a reversal of the judgment of conviction of appellant therein. The only difference between that case and the instant one is that the evidence in the former tended to show only that Caudill, if he were guilty at all, was guilty as a principal, there being no evidence sustaining his guilt as aider and abettor. Therefore, this case is stronger than that one, in that in this case, as we have seen, appellant expressly confessed that he was the principal and was corroborated in that by his mother. In the Caudill opinion where the same alleged error was relied upon we said: ''This instruction (the aiding and abetting one) might properly have omitted the submission to the jury of any question as to whether appellant aided or abetted in the shooting and death of the deceased, as the evidence demonstrated that the deceased was shot and killed by appellant alone, but its failure to do so was not prejudicial error.''

In the Hagan case supra—which is the chief one cited in support of the opinion—the Caudill opinion was referred to, and the distinction that the court attempted to draw between it and the Caudill case is thus stated (179 Ky. 201, 200 S. W. 338): ''In that case, however, not only Caudill, but all the witnesses for the commonwealth, stated that he fired the fatal shot, and that the person he was charged with aiding and abetting did

not shoot at all. In the case under consideration, appellant was the only eyewitness, and the Commonwealth introduced certain circumstances to overcome the effect of her testimony.''

No such distinguishing facts exist in the instant case, from which I conclude that the Hagan opinion is not applicable since its facts are not on all fours with those appearing in this one, except in this case the appellant admitted the homicide as having been committed by himself alone without the assistance of an aider or abettor, thus making it a stronger one for holding that the aiding and abetting instruction was not prejudicial as was held in the Caudill case.

It is essential that the citizenry of all sovereignties should not have their confidence in their courts shaken, but I fear that the unfounded reasons given in the majority opinion for reversing the judgment in this case might have that effect.

Believing that the opinion is erroneous, I most respectfully dissent and believe that the judgment should have been affirmed.