# Carr v. Commonwealth.

January 25, 1949.

Sandusky & Krueger for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HELM—Affirming.

Appellant, Henry Carr, was convicted of malicious shooting and wounding and his punishment fixed at 21 years in the state reformatory. He assigns three errors for reversal: (1) The court erred in admitting incompetent testimony over defendant's objection and exception; (2) the court erred in overruling the defendant's motion for a directed verdict at the close of the Commonwealth's evidence in chief, and (3) the defendant was entitled to a directed verdict of not guilty because the Commonwealth failed to introduce any proof showing that the Pulaski circuit court had jurisdiction of the subject matter of this action.

The prosecuting witness, John Brumley, testifying at Somerset, stated that he lived at Cedar Grove; that Cedar Grove is in Pulaski county; that appellant lived "about a mile back this side of me;" that in July, 1946,

about 4 o'clock in the afternoon, he and appellant went into Somerset in a truck, got a fifth of whiskey, drove back to Cedar Grove; that Carr went almost home with him "to within about 500 yards of the house" that "he wanted to go down to the house with me and I told him he couldn't go, that they wouldn't want him down there. * * * I told him to go home, * * * I got up and walked off and then he shot twice, I was shot twice." When asked who shot him, Brumley stated "I never seen him shoot me, but there wasn't nobody there but me and him. * * * It was in the woods. * * * There was a road." Brumley stated that he had started down the road toward his house; that he had gone about 20 feet when the two shots were fired from the place where he had just left Carr standing. The first shot struck his arm, the second shot took effect about an inch and a half to the left of his spine and lodged in the center of his chest, next to his heart. It was later removed by Dr. Holtzclaw. The bullet, a thirty-two caliber, was introduced in evidence. Carr owned a thirty-two caliber revolver.

Frank E. Beatty, sheriff, learned of the shooting, secured a warrant for Carr, "looked for him everywhere, but he was gone." Judge Tartar was asked about a warrant and the disappearance of the appellant. Objection was made to his testimony.

Appellant stated that he and Brumley went to Somerset on the afternoon in question; that they came back to Cedar Grove; that he had known Brumley three or four years; that when "it was coming daylight" he left in his truck "to go to Tennessee to buy * * * land;" that he went from Tennessee to Illinois and was arrested there by a detective and brought back to Somerset by the sheriff of Pulaski county a few days before his trial on October 29, 1947; that he had not seen Brumley from the time of the shooting until "today, in the court room." He stated that at the time Brumley was shot he heard a couple of shots; that he "was setting at the time I heard the shots;" that he "was pretty well drunk;" that he "had a revolver in the truck when we come back * * * a thirty-two special;" that he was carrying it in the pocket of the truck; that he did not have it at the time of the shooting, and that he did not know who shot Brumley. On cross-examination he stated that he was positive that he heard two shots; that the shots did not

scare him; that he wasn't afraid somebody had shot his friend; and that he didn't go down to see who fired the shots. He denied firing the shots.

Appellant, when asked if he had been convicted of a felony, replied ''Yes, sir, a misdemeanor.'' He finally admitted that in Kentucky he had been convicted of robbery and grand larceny. He also admitted that he had been convicted of grand larceny more than once in the state of Illinois. The jury was properly admonished as to this evidence.

In an effort, apparently, to establish that appellant fled the country shortly after Brumley was shot, Judge Tartar and sheriff Beatty were asked questions about a warrant for Carr and about a bond. These questions were not relevant or material, and should have been omitted. They were not substantially prejudicial. They were asked, it seems, for the purpose of showing that Carr left the country following the shooting, a fact which he admits.

It was proved that Brumley, Carr and Carr's father lived at Cedar Grove. The jury is presumed to have some knowledge of local geography, such as the location of towns. The shooting took place between the homes of Brumley and Carr. This court takes judicial knowledge of the geography of the state and we know that Cedar Grove is located between Somerset and Burnside, several miles within the boundary of Pulaski county. The contention that the Commonwealth failed to show the shooting took place within Pulaski county is without merit. Nelson v. Commonwealth, 232 Ky. 568, 24 S. W. 2d 276; Howard v. Commonwealth, 304 Ky. 149, 200 S. W. 2d 148.

The verdict of the jury fixed appellant's punishment at 21 years, the maximum, for this offense. The testimony for the Commonwealth amply supports the verdict of the jury.

Judgment affirmed.