**Rudolph HAMILTON, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 25, 1966.

Hobson L. James, Elizabethtown, for appellant.

Robert Matthews, Atty. Gen., F. E. Wood, Asst. Atty. Gen., Frankfort, for appellee.

MONTGOMERY, Judge.

Rudolph Hamilton was convicted of the willful murder of Ervin Basham and was sentenced to death. On appeal he urges that the court erred in refusing to grant a continuance, in the admission of certain testimony, and in refusing to discharge the jury because of the misconduct of the jury and because of the improper opening statement and closing argument of counsel.

A lone robber shot Ervin Basham in the back during the course of a holdup of Basham's Liquor Store. Basham died almost instantly. The robbery occurred about ten o'clock on Saturday night, December 28, 1963. The store was located in Meade County on U. S. Highway 60 about three miles from Fort Knox Military Reservation. Appellant was then in the United States military service and was stationed at Fort Knox.

A helper in the store was an eyewitness to the slaying. Two other witnesses who lived in an apartment in the rear of the store heard the shot and quickly went through their doorway into the small anteroom. They saw Basham fall. They also saw the holdup man backing out of the front door of the store with a pistol in his hand. He brandished the weapon and demanded that they stay back. One of these two witnesses later identified appellant in the courtroom. The eyewitness to the slaying also identified appellant, and testified that at gun point he was forced to take $319 from the cash drawer and give it to the robber.

The slayer fled. One of the witnesses took a pistol that was hanging on the wall inside the apartment and exchanged fire with the robber. An auto with a single occupant had been waiting near by.

Appellant contends that a written statement made by him was improperly admitted into evidence because it had been coerced after he had requested counsel and had not been furnished any. The statement described in detail the related events, before and after, and the holdup. In the statement appellant said that the holdup had been planned with Sylvester Coleman and Rodney Faison. See Faison v. Commonwealth, Ky., (decided March 25, 1966).

The sequence of events prior to the statement is important. The holdup occurred about ten o'clock on Saturday night. The investigation was conducted by civil authorities and Fort Knox Criminal Investigation Department officers. Appellant was taken into custody by military authorities about 4 a. m. on Sunday. He was questioned by them about two hours and released. Appellant was again taken into custody by the military authorities about 2 or 3 p. m. on Monday. At the top of the statement are two notations of time: "1520 hours (3:20 p. m.) 30 Dec 63" and "1545 hours (3:45 p. m.) 30 Dec 63." According to the

testimony this is about the time the statement was reduced to writing.

Appellant's statement was typewritten on a military form, with additional pages attached. It consists of a narrative statement followed by some questions and answers. The statement was typed by Reis R. Kash in the presence of LeRoy F. Lussier. Lewis J. Massey, another C.I.D. investigator, was in and out of the room while the statement was being made.

The form on which the statement was made contained the following printed matter appropriately filled in at the beginning:

"I have been informed by Lewis J. Massey who stated he is an MP Criminal Investigator of the United States Army, and that he is conducting an investigation of murder/robbery of which I am suspected.

"The Uniform Code of Military Justice, Article 31, has been read and explained to me by Lewis J. Massey I understand that I do not have to make any statement whatsoever and any statement I make may be used as evidence against me."

The form concluded with the following affidavit which was properly signed and executed by appellant:

"I Rudolph Hamilton, have read this statement which begins on page one (1) and ends on page —. I fully understand the contents of the entire statement made by me. The statement is true. I have initialed all corrections and have initialed the bottom of each page containing statement matter. This statement has been made by me freely without hope of benefit or reward, without threat of punishment, and without coercion, unlawful influence, or unlawful inducement."

The statement was initialed as stated in the affidavit.

At the bottom of the form is a printed statement of the rights of an accused under the Uniform Code of Military Justice, Article 31; Title 10, United States Code, Section 1219; and the Fifth Amendment to the Constitution of the United States to the effect that an accused shall not be compelled to "talk."

At the trial, upon objection being made to the introduction of the statement into evidence, the court heard testimony in chambers concerning its competency and admissibility. KRS 422.110(2). The only witness to testify at the hearing in chambers was Lussier, one of the C.I.D. investigators who took the statement. He testified that appellant at the time of being taken into custody was in the military service and was subject to the Uniform Code of Military Justice. He also testified as follows:

"Q 28. Did you, before he made any statement or before questions were asked him, inform him that anything he said would be subject to be used against him?

"A I was with Mr. Massey immediately after we identified ourselves to Rudolph Hamilton. And I read and advised him of his right under the Uniform Code of Military Justice. Mr. Massey advised him he did not have to make any statement and any statement he made could be used against him. Mr. Massey then informed him he was suspected of murder and robbery. Then the questioning began.

"Q 29. And the questioning did not begin until after he was informed he didn't have to tell anything and it could be used against him?

"A We are bound by regulation.

"Q 30. And did you so inform him that he didn't have to talk and that it could be used against him?

"A Yes, sir.

"Q 31. Before he ever made any statement?

"A Yes, sir.

"Q 32. Now was any inducement offered or held out to him in the way of immunity for him to tell anything about that?

"A No, sir.

"Q 33. Were there any threats made as to anything adverse that would or could happen if he didn't make a statement?

"A No, sir."

Lussier testified that appellant was without counsel while he was in custody prior to giving the statement; that after portions of a statement given by one Sylvester Coleman had been read to appellant he requested counsel; that he was then advised that "at that time under our regulations as long as he wanted to see counsel we could no longer interview him"; that the investigator sought to obtain counsel for appellant from the Judge Advocate General's Section (the Law Department of the Army) but, apparently because of the holiday season, none was then available; and that appellant was then informed of the unavailability of counsel.

Lussier testified further: "I was then instructed by the Operational Officer that the State Police had jurisdiction and to turn Hamilton over to them. I went and informed Hamilton that at that time I was going to turn him over to the State Police, and would he accompany me. He stated at this time that 'Coleman is lying and I want to see the matter cleared up.' Hamilton said Coleman is lying and I want to clear this up. I told him again as long as he wanted counsel I could not talk to him. He then told me, I withdraw my request for counsel and said let's talk about it, and this statement was the result of that."

■ On this uncontradicted testimony the court held that the statement was competent and admissible as being voluntary. Tarrence v. Commonwealth, Ky., 265 S.W. 2d 52. Since there was no contradiction on the issue of voluntariness it was unnecessary to submit the issue to the jury. Cf. Karl v. Commonwealth, Ky., 288 S. W.2d 628.

It is urged that the statement is inadmissible under the rule in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. In Escobedo it was held:

" * * * that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342 [83 S. Ct., at 795], and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

■ This case is distinguishable from Escobedo because appellant had withdrawn his request for counsel before making his statement and because the investigating officers had effectively warned appellant "of his absolute constitutional right to remain silent." It appears from the quoted testimony of Lussier heard in chambers by the trial judge and from the statements, warning, and affidavit contained in the incriminating statement, that appellant from the time he was first taken into custody and until the statement was made was fully advised as to his right to counsel, his right to refuse to make any statement, and that any statement made could be used against him. On the issue of coercion, appellant's statement that "Coleman is lying and I

want to see the matter cleared up" indicates the reason the appellant made the confession. This, coupled with his withdrawal of his request for counsel in the light of the repeated warnings of his rights, indicates that a thorough knowledge of his constitutional rights had been imparted to appellant and renders the confession a voluntary one, as it was so found by the trial judge. As was said in Carson v. Commonwealth, Ky., 382 S.W.2d 85, cert. denied 380 U.S. 938, 85 S.Ct. 949, 13 L.Ed. 2d 825, these uncontradicted basic factual differences clearly distinguish this case from the Escobedo case. The finding of the weapon used, as pointed out by appellant, and other admissions subsequent to the statement likewise become admissible as flowing from the statement.

Other objections were made to the order of introduction of certain testimony and on the ground that the introduction of certain testimony constituted surprise, but an examination of these contentions reveals their lack of merit. Howard v. Commonwealth, 304 Ky. 149, 200 S.W.2d 148.

▆ Appellant moved for a continuance when the case was called for trial. Three grounds are urged as bases for the motion. The first is the absence of certain witnesses. Two witnesses were not served with subpoenas because one was in the military service in Fort Lewis, Washington, and the other one was in Korea. Two others did not appear when the case was called for trial. Appellant filed an affidavit in which he set forth the testimony expected to be given by each witness. These statements were read to the jury. The testimony was cumulative. In Greenwell v. Commonwealth, 303 Ky. 78, 196 S.W.2d 884, such procedure was held not to be error.

▆ Second, appellant filed an affidavit in support of his motion for a continuance in which it was stated that the Commonwealth's attorney, while in conference in a witness room adjoining the courtroom,

was heard to say "that it had been requested that a plea of guilty be made and a life sentence imposed." While it is claimed that the words were spoken loudly enough for jurors to hear, it was not shown that any prospective juror did hear the words. The jury had not been impaneled at that time. The Commonwealth's attorney filed a counteraffidavit in which he denied making the claimed statement. This affidavit was supported by affidavits of four other people to the same effect. This placed the matter within the discretion of the court to decide, and under the conflicting proof the finding of the trial court that no impropriety occurred is sustained by the evidence. Pennington v. Commonwealth, Ky., 371 S.W.2d 478.

▆ The last ground urged for the continuance concerned the publication in a local newspaper of an article entitled "Tight Security Measures for Murder Trial." The article contained a quotation from the sheriff, saying that anyone who desired to attend the trial would have to submit to a search. The article also quoted the Commonwealth's attorney as saying that the death penalty would be sought. It was claimed that this newspaper article, and possibly others, would influence prospective jurors to the prejudice of appellant. In Dewberry v. Commonwealth, 241 Ky. 726, 44 S.W.2d 1076, a murder case, a death penalty conviction was affirmed despite evidence of strong feeling in the county against the defendant to such extent that troops were dispatched by the Governor to be present during the trial and to escort the defendant from the jail to the courthouse and back, and further despite the fact that counsel for the defendant was assaulted on the streets of the county seat.

Again, it was within the discretion of the trial judge to weigh and determine the effect of the notoriety and publicity concerning the trial as it might influence prospective jurors. On their voir dire the jurors who were finally selected to try the case were asked concerning newspaper arti-

cles, and all who had read newspaper articles declared under oath that regardless of the fact that they had read such articles they had no opinion in the case. It is, therefore, concluded that no abuse of discretion was shown. The motion for continuance was properly denied.

After the regular jury panel was exhausted a special panel of one hundred jurors was called. Following a roll call of the special panel and during a recess, O. H. (Hayes) Basham, a brother of the murdered man, had a conversation with two of the prospective jurors in open court and in the presence of all of the prospective jurors. Appellant, because of this, contends that his motion to discharge the selected jurors and the prospective jurors should have been sustained. In response to the motion, O. H. (Hayes) Basham admitted the conversation, named the prospective jurors, and stated that he did not discuss the case with either of them and that both prospective jurors were later called, discharged, and did not serve on the jury.

■ Familiarity with jurors, prospective or selected, by interested parties is suspect, but it is commonplace in many rural sections where the formalities of the law are not so well known or observed among people who are friends and acquaintances. No possible prejudice to the appellant is shown to have occurred since both prospective jurors were properly discharged.

■ Appellant complains of two incidents which are charged as misconduct of the jury during the trial. The first occurred when three Commonwealth exhibits, a pistol, a spent bullet and cartridge, and three test bullets and three cartridges, were shown to the jury. When this was done the members of the jury engaged in some conversation and discussion among themselves about the exhibits. There is no disclosure concerning the content of the conversation or discussion. It occurred in the presence of the trial judge who denied a motion to discharge the jury. He admonished the jurors not to discuss the exhibits as they were being passed among them.

■ The second incident occurred after the court had adjourned for the day when a juror, out of the presence of the appellant and his counsel, discussed with the trial judge his desire to ask a witness some questions. The next morning the juror, separated from the other jurors who were in the sheriff's charge, was permitted to make known his questions in the presence of the judge, the appellant, and opposing counsel. On both occasions, it appears from the record, the judge advised the juror that he could not answer his questions as they would have to be asked of the witnesses.

Appellant insists that this conduct on the part of the juror constituted an improper separation of the jury and that it was especially prejudicial to appellant because one of the witnesses sought to be inquired of by the juror was recalled to the witness stand. The court sustained appellant's objection to the witness' testifying further. It is contended that this prejudiced appellant's rights as it served to emphasize in the mind of the juror appellant's reluctance to have the answers to the desired questions.

The key to the whole matter is in the nature of the questions sought to be asked by the juror. It developed that he was a gun expert. He desired to ask: When the test bullets were fired, was the gun fired with one bullet at a time or was the clip inserted and the gun fired in that fashion? And, he continued, if the clip had been lost two years ago, as stated, it was his opinion that there would be rust on the gun, and when he had examined the gun he was of the opinion that it was not rusty and the corrosion would have disappeared if fired with a clip.

In view of the testimony of eyewitnesses concerning the shooting of Ervin Basham, the questions appear immaterial. The identity of the appellant was the important thing. There was no question as to how

Basham was killed. The identity of the gun in this case was of slight significance.

Under these circumstances there has been an insufficient showing of conduct amounting to prejudicial error, and the decision of the trial judge on the claimed jury misconduct will not be disturbed. Smith v. Commonwealth, Ky., 366 S.W.2d 902.

■ Various objections were made to the opening statement of a special prosecutor and to the closing arguments of the county attorney and Commonwealth's attorney. The number of objections made indicates the commendable zeal of the defense counsel in seeking to protect appellant's rights. The challenged parts of the opening statement contained an explanation of the employment of the special prosecutor and reference to the fact that a "death verdict" would be sought if the evidence warranted. Objection was also made that portions of the statement were argumentative. However, a reading of the statement viewed in the light of the seriousness of the offense reveals that there was little, if any, objectionable matter therein and certainly none that was prejudicial error.

■ The county attorney's argument contained an appeal to the jury to wipe out crime, to make Meade County a place where law would be enforced, and to stamp out violence, killing, and robbery. He also commented that he had never heard a more flimsy defense.

■ In his closing argument the Commonwealth's attorney made reference to the courteous treatment accorded appellant and to the protection of his constitutional rights prior to the trial. Objection was made that these matters were outside the record. Upon being reminded of such, the Commonwealth's attorney then apologized and asked that the statements be stricken. An objection was sustained and the jury was told not to consider the statement of the Commonwealth's attorney to the effect that the offense was the worst ever committed in the county while he had been Commonwealth's attorney. The corrective action taken was sufficient as to each of these matters.

In closing his argument an objection was sustained to the statement "if you don't impose the death penalty in this case, if you don't, we might as well erect a neon sign on top of the courthouse saying to others —Free territory in Meade County." The court refused to give an admonition or to discharge the jury. The Commonwealth's attorney continued: "Then I'll put it this way. If you don't inflict the death penalty in this case, then you are going to open the door to every robber, to every person that wants to take advantage of a tavern operator—a store keeper, anybody who handles money in their place of business. You are going to open the door and tell them to come on in boy. If you don't get it or get shot at—shoot him down. And then after it's all over you get life. That's what you are going to be saying." Repeated objections were made to the last argument.

Appellant relies on May v. Commonwealth, Ky., 285 S.W.2d 160, and Parsley v. Commonwealth, Ky., 306 S.W.2d 284. The May case is distinguishable because the objectionable arguments were a plea for personal revenge, a plea for justice by harsh measures of punishment, and on matters outside the record, instead of sober consideration of all of the evidence.

The Parsley case is also distinguishable since the challenged argument contained so much that was objectionable, including matters outside the record, and efforts to cajole or coerce the jury, coupled with a failure of the trial court to sustain objections or to rule.

■ In reviewing the objections to the closing argument, objections were sustained or the argument was stricken except the argument concerning the effect of failure to inflict the death penalty. The imposition of a severe penalty as a method of stopping crime is proper argument. Brown

v. Commonwealth, Ky., 357 S.W.2d 681. Reference to the effect of leniency on the part of juries is also permissible. Grigsby v. Commonwealth, Ky., 304 S.W.2d 782. Vigorous comment on the evidence pointing to accused's guilt is also proper. Stumbo v. Commonwealth, Ky., 299 S.W.2d 115. Counsel may give his interpretation of the evidence and his recommendation as to the punishment which should be inflicted if the defendant should be found guilty. Lewis v. Commonwealth, 307 Ky. 733, 212 S.W.2d 269. Cf. Holmes v. Commonwealth, 241 Ky. 573, 44 S.W.2d 592.

 The portion of the argument objected to came toward the end of the argument. It was an appeal to the jury to inflict the death penalty for an inexcusable killing. The comments were made in reference to the facts of the case and the counsel did not go outside the record. In Lawler v. Commonwealth, 182 Ky. 185, 206 S.W. 306, a similar argument was approved as constituting the reasons for the prosecutor's opinion that the death penalty should be imposed. Chappell v. Commonwealth, 200 Ky. 429, 255 S.W. 90; Dalton v. Commonwealth, 216 Ky. 317, 287 S.W. 898; Cooksey v. Commonwealth, 235 Ky. 454, 31 S.W.2d 703. In view of the nature of the case and considering the latitude allowable to a prosecutor, the argument is not objectionable.

Judgment affirmed.